## PERKY v. MILLER et al.
### No. 4457.

Court of Civil Appeals of Texas. Amarillo.

Oct. 28, 1935.

Underwood & Strickland and E. Byron Singleton, all of Amarillo, for plaintiff in error.

Morgan, Culton, Morgan & Britain, of Amarillo, for defendants in error.

MARTIN, Justice.

The original opinion herein contains an incorrect statement of a matter, which in our opinion does not affect the disposition made therein of this case. To conserve space we withdraw the original opinion and substitute this in lieu thereof.

The parties to this appeal will carry here their trial court designation.

Defendants object to a consideration of plaintiff's brief. We pass this without discussion, as in our opinion the trial court correctly rendered judgment for defendants, so that no injury could occur to them by our failure to decide this question.

We decide this case upon questions that seem to render immaterial practically all points argued by plaintiff, and these will be referred to only briefly, if at all. This case turns largely upon the proper construction of a written lease contract, covering about four sections of land; its material provision being ·

"That the lessors for and in consideration of the agreements and stipulations hereinafter mentioned, to be kept and performed by the Lessee, has leased and does by these presents rent and lease unto the said Lessee the following described lands. * * *

"To have and to hold the said land unto the said Lessee from the 1st day of May, A. D. 1930 until the 1st day of September, A. D. 1933, then from year to year thereafter, unless and until either party hereto shall on or before the 1st day of June, of the calendar year give notice in writing to the other party of the purpose, desire and intention to terminate said lease the 1st day of September following, or unless this contract shall earlier be terminated under and pursuant to the provisions therefor herein contained.

"The Lessors agree and covenant:

"(a) To furnish a good, substantial fence around the above described land, said fence not to exceed four wires and to be sufficient to turn ordinary domestic stock.

"(b) To pay Lessee $1.00 per acre for each acre of sod broken, said sum to be paid out of the first rent paid to Lessors as hereinafter provided.

"The Lessee agrees and covenants:

"(a) To deliver to Lessors free of all expense to Lessors at a public elevator or F. O. B. cars at the railroad station nearest the leased premises, one-fourth of all the grain raised on the said land, said portion of grain to be in full settlement of all rent due.

"(b) To maintain all fences and other improvements which shall be placed on said land, and at the termination of this lease return the same in good condition, reasonable wear and tear excepted.

"(c) To furnish all tools, implements, power and labor necessary to break out the said land, cultivate it when necessary, and sow it in due season in wheat. ·

"(d) To furnish all seed necessary and to harvest all crops in due season, performing all work in a workmanlike manner.

"(e) To sow all the land in the Fall of every year in wheat unless conditions are such that it is impossible or not practicable to do so, then in that event, all of said land not sown in wheat shall be sown in grain the following Spring."

Plaintiff sued for a breach of this contract. The gist of his case appears in the following paragraph of his petition:

"That said plaintiff went into possession of said real property consisting of 2,460 acres of sod land, and that plaintiff has faithfully and in a workmanlike manner, performed all the terms and conditions of said contract as imposed upon him, and has broken out in a workmanlike manner, the entire 2,460 acres of sod land; that upon the completion of the breaking out of said sod land, the defendants and each of them became indebted and bound to pay said plaintiff the consideration named in said lease contract, to-wit, one dollar per acre, or the total sum of $2,460.00; that in accordance with said agreement, plaintiff was to hold, as security for the payment of this obligation, the rentals coming from said land, until such time as he should receive therefor said sum of $2,460.00; that the total value of the crops raised on said premises during the time that plaintiff has farmed same, has amounted to the total sum of $2,240.00, 1/4 of which, or the sum of $560.00, being the amount contracted to be paid as rent to defendants, has been applied by plaintiff towards the payment of the indebtedness owing by said defendants for the breaking out of said land, leaving a balance due and owing by defendants to said plaintiff in the full sum of $1,900.00, for which plaintiff sues."

Defendants answered by a general denial and special pleas, the substance of the material ones being: That plaintiff breached said contract in failing to break out and plant same to wheat in the fall of 1930, and in subrenting the land to others for the entire three years, and in not performing his contractual obligation to personally break and cultivate the land, and especially for the long delay in breaking said sod land.

The trial court peremptorily instructed the jury for defendants. His action was, in our opinion, correct for the reasons now given.

We are of the opinion that the promise of defendants to pay $1 per acre for the sod breaking is not an independent provision, severable from the remainder of the contract. This clause and the one which contains the covenant of plaintiff to break the land, plant, and deliver one-fourth of the grain raised, out of which the price of the sod breaking was to be paid, are interdependent and reciprocal covenants. Giving effect to the intention of the parties, it seems clearly inferable that the quoted covenants of plaintiff, supra, constituted a material inducement and consideration for the promise of defendants to pay the $1 per acre for sod breaking, which forms the basis of the present suit. If so, the contract in this respect is entire and indivisible. City of Comanche v. Hoff & Harris (Tex. Civ. App.) 170 S. W. 135; Dorr v. Stewart, 3 Tex. 479; 10 Tex. Jur. p. 328.

"The presumption is that all stipulations in a contract are dependent and a promise will be so regarded in case of doubt." 10 Tex. Jur. p. 327; Echols v. Miller (Tex. Civ. App.) 218 S. W. 48; Reitzer v. Medlake Development Co. (Tex. Civ. App.) 27 S.W.(2d) 563. See, also, 2 A. L. R. page 645.

It seems obvious from the entire contract that the selection of a particular individual, who gave promise of performing the work promptly and in a good and farmerlike manner, so that the rent from the crops would quickly pay for the price of the breaking, was a material inducement to defendants to promise payment for such sod breaking at $1 per acre.

If we are correct in this conclusion, it follows that, since the contract was indivisible, the plaintiff was not entitled to recover for a breach thereof without showing performance, as alleged by him in the paragraph of his petition quoted above. This is elementary. He did not sue upon a quantum meruit, and the absence of such a count from his petition obviates the necessity of discussing some of the questions argued by plaintiff on this appeal.

The contract impliedly at least required the breaking of the land and planting of same to wheat in the fall of 1930. Plaintiff claims it was too dry, but the evidence shows he sublet about one section of this to one Vaughn and another who were to break and plant same to wheat and who did break and plant about 150 acres to wheat in the fall of 1930; that he sublet to one Drerup about three sections who failed to get any broke or planted; that plaintiff did nothing himself whatever towards such breaking. He wrote defendants in May, 1930, when he forwarded the contracts for their signature, in part: "We have just had a fine season and the plowing should be done at once."

No substantial portion of the breaking was done until the spring of 1931, and only 150 acres of the land were sown to wheat in 1930.

We assume, but neither expressly nor impliedly decide, that the defense of dry weather was a valid one in this case, since the matter is not briefed, but call attention in passing to the following cases: Gunter v. Robinson (Tex. Civ. App.) 112 S. W. 134; Davis v. Davis (Tex. Civ. App.) 266 S. W. 797; Northern Irrigation Co. v. Watkins (Tex. Civ. App.) 183 S. W. 431.

We give the above as part of the history of the case without expressly deciding whether or not the court was justified in peremptorily instructing the jury, based on evidence of a breach of the contract to prepare and plant the land to wheat in the fall of 1930. We think the following did require the court to so instruct the jury:

It conclusively appears that plaintiff, himself, never at any time broke or cultivated any of this land. Instead, he made what we construe to be contracts of subletting in violation of article 5237, R. S. 1925. Since plaintiff claims these were only contracts for work and labor and denies vigorously their legal effect as subletting contracts, we quote literally the material portions of the first of these:

"Party of the Second Part agrees:

"(a) To deliver to Party of the First Part free of all expense to Party of the First Part at a public elevator or F. O. B. cars at the railroad station nearest the above described land, one-fourth of all grain raised on the said land.

"(b) To maintain all fences and other improvements which shall be placed on the said land and at the termination of the contract return the same in good condition, reasonable wear and tear excepted.

"(c) To furnish all tools, implements, power and labor necessary to break out the said land, cultivate it when necessary, and sow it in due season in wheat.

"(d) To furnish all seed necessary and to harvest all crops in due season, performing all work in a workmanlike manner.

"(e) To sow all the land in the Fall of every year in wheat unless conditions are such that it is impossible or impracticable to do so, then in that event all the land now sown in wheat shall be sown in grain the following Spring.

"In consideration of the above covenants and agreements Party of the First Part agrees to allow Party of the Second Part three-fourths of all grain raised on the said land as payment in full for all work performed. * * *

"It is furthermore agreed that in case Party of the Second Part fails to carry out any part of this contract that they shall immediately give up possession to Party of the First Part and in case of a termination of this contract Party of the First Part shall have the right to enter upon said land and take possession of it."

Plaintiff's agreement was in legal effect to break and farm this land personally. Defendants had the right to select their own tenant. Instead, the evidence conclusively shows plaintiff selected their tenants without their knowledge or consent. That the above contract and the attending facts show that Vaughn and others were subtenants only is, we think, amply sufficient to justify the trial court's action. Hudgins v. Bowes (Tex. Civ. App.) 110 S. W. 178; Shoemake et al. v. Gillespie (Tex. Civ. App.) 28 S.W.(2d) 1114; 27 Tex. Jur. pp. 390, 391. The designation of this by plaintiff as a labor contract does not alter its legal effect. The other subletting contracts were not quite so plainly evidenced as that quoted, but sufficiently so to show their true character, we think.

The meaning and effect of the original and subsequent contracts were, in our opinion, questions of law and not of fact.

Estoppel is claimed against defendants to urge the above. Plaintiff himself kept the true facts from defendants—at least until such contracts had been made and partly performed. No silence or affirmative act of defendants is pointed out

which induced plaintiff to change or alter his position to his injury. Indeed, the evidence as a whole conclusively shows plaintiff has been benefited. He did nothing whatever personally towards carrying out his part of the contract. Others did the breaking and farming. He received several hundred dollars rent. He paid out nothing. He actively concealed the true facts for a time at least from defendants, who lived in California. We see no basis for a plea of estoppel.

It is affirmed by defendants, and denied by plaintiff, that the contract as a whole shows no absolute liability, but an agreement to pay out of a particular fund which never came into existence. Much of the briefs of the parties deals with this phase of the case. In view of the above holding, we deem it unnecessary to pass on this.

The judgment is affirmed.