Mrs. J. N. NUTT, Appellant,

v.

MEMBERS MUTUAL INSURANCE COM-
PANY, Appellee.

No. 17681.

Court of Civil Appeals of Texas,
Dallas.

Nov. 19, 1971.

Rehearing Denied Dec. 10, 1971.

David M. Kendall, Jr., Woodruff, Ken-
dall & Smith, Dallas, for appellant.

Emory L. White, Jr., Thompson, Coe,
Cousins, Irons & Porter, Dallas, for appel-
lee.

GUITTARD, Justice.

This suit was brought by the executrix of a deceased corporate officer to recover the salary claimed to be due for two years of the contract period remaining after his death. The question is whether the written contract shows the parties' intent that the salary continue, contrary to the general rule that a contract for personal services ends with the employee's death. The trial court held the salary ended at his death, and we affirm.

By the contract in question The Members Mutual Insurance Company employed J. N. Nutt as executive vice-president and managing director at a salary of $25,000 per year, payable in bi-weekly installments. The contract provides: "Except in the event of earlier termination, as hereinafter specifically provided * * * the term of the employment of the OFFICER shall be for a period of thirty-six months * * *." The company has the right to terminate the contract under specified circumstances of misconduct, but the contract states: "In the absence of any of these circumstances, this Contract shall remain in force until terminated as herein provided." If the company removes the officer from his office as executive vice-president and managing director for any cause other than the grounds of misconduct specified, the company is nevertheless liable "for the unpaid portion of the minimum salary for the balance of the term of this Contract." During the period of the contract remaining after such removal, the officer promises to "offer such consultation and advice to COMPANY as may be reasonably requested of him." Since Nutt was a former Texas insurance commissioner, we assume that the parties considered his consulting services to be of substantial value.

The contract "shall be binding upon and inure to the benefit of the heirs, administrators, successors and assigns hereof."

In October, 1967 Nutt was removed as executive vice-president and managing director, but the company continued to pay his salary, as the contract required. On January 20, 1968, he died. The company paid his executrix his salary for the remainder of that month, but refused to make any further payments. After expiration of the three-year period, the executrix sued for the salary for the remaining two years.

■ The general rule, that a personal service contract terminates on death of the employee, applies to the employer's duty to pay as well as the employee's duty to serve. Moran v. Wotola Royalty Corporation, 123 S.W.2d 692 (Tex.Civ.App., Fort Worth 1938, writ ref'd); Jones v. Servel, Inc., 135 Ind.App. 171, 186 N.E.2d 689 (1962); 6 Corbin on Contracts, § 1335 (1962). The continued life of the employee is a constructive condition imposed by law in the interest of justice, independent of the intention of the parties, unless the language of the contract indicates a contrary intent. 3A Corbin on Contracts, § 632 (1960). See Restatement, Contracts, § 253 (1932).

Nutt's executrix contends that the general rule does not apply to this contract because it expressly provides that the contract shall continue for a term of thirty-six months unless Nutt dies while active as vice-president or his employment is terminated for other contingencies that did not occur. She insists that this language amounts to an express provision that the salary shall continue for the full three years, even though Nutt dies within that period, if his death occurs after removal from his position as vice-president.

■ We do not agree that the contract expressly provides that Nutt's salary shall continue after his death. The contract provides, "the term of the employment of the officer shall be for a period of thirty-six months." Subsequent provisions for payment of the salary and termination of the contract depend on this provision concerning the period of employment. The employment did not continue and could not continue after Nutt's death because the contract clearly provides for personal serv-

ices by Nutt. The executrix makes no contention that the estate was bound to render services to the company after his death, either consultative or managerial, or that the company was bound to accept any services tendered by the estate, notwithstanding the provision that the contract "shall be binding upon and inure to the benefit of the heirs, administrators * * and assigns." Such a provision in a personal service contract does not make the employee's obligation performable by his estate. Jones v. Joy Manufacturing Co., 381 S.W.2d 860 (Mo.1964). It follows that notwithstanding the contract provision that the employment shall continue for thirty-six months except as specifically provided, there was yet another contingency, not specifically provided, that would necessarily terminate such employment, namely, Nutt's death after removal from his position as vice-president. The question is whether the salary obligation continued after termination of employment in that instance. The contract does not expressly so provide, and unless its provisions show such intent by necessary implication, we must apply the general rule that the continued life of the employee is a constructive condition to further obligation of either party to a contract for personal services.

When we consider all the provisions of the contract we find no necessary implication that the parties intended Nutt's salary to continue after his death for the benefit of his estate. It specifies five instances in which the employment may terminate before expiration of thirty-six months and in each instance provides that the salary obligation shall also terminate:

(1) Proof of specified acts of misconduct (section V).

(2) Failure of the members of the company to adopt a bylaw permitting employment beyond one year, in which instance liability for salary is limited to a one-year period (section V).

(3) Death of the officer while he is active as executive vice-president and managing director (section VI).

(4) Failure of the officer to perform his duties on account of illness or any other incapacity for a continuous period of ninety days (section VII).

(5) Acceptance by the officer of any employment or remuneration from any other insurance firm, association or corporation (section XII).

We cannot accept the view of the executrix that specification of these instances, together with other language limiting the company's right to terminate the employment within the period to the instances specified, shows the parties' intent that the salary obligation should continue in the present instance, not specified in the contract, in which the employment terminated before the end of the period because of the employee's death. Neither can we agree that the provision in section VI, that all remuneration terminates on Nutt's death while active as vice-president, indicates an intent that the opposite result should ensue in case of his death after removal from his executive position. It is more reasonable to interpret the contract as making no provision for the latter contingency.

The executrix also argues that if Nutt had failed to offer consultation and advice to the company after removal from his executive position, as section V requires him to do, the salary obligation would not have ceased, and the company's only remedy for such a breach would have been to sue him for damages. Hence, she reasons, his inability because of death to offer consultation and advice does not affect the company's liability for his salary. The substance of this argument is that performance of his promise to offer consultation and advice on request is not a condition of the company's obligation to pay his salary, because the promises are independent of each other.

This is the same argument as before in another form, and we reach the same conclusion. Whether mutual promises are independent or dependent must be determined by the parties' intent as evidenced by the language of the contract.

In case of doubt the court will presume that such promises are dependent rather than independent, since such a construction ordinarily prevents one party from having the benefit of his contract without performing his own obligation. Reitzer v. Medlake Development Co., 27 S.W.2d 563 (Tex.Civ.App., El Paso 1930, no writ); Echols v. Miller, 218 S.W. 48 (Tex.Civ.App., Amarillo 1920, no writ); 3A Corbin on Contracts, § 656. Again, we look to the contract to determine whether a contrary intent is shown either expressly or by necessary implication, and again we find no such intent. In all instances in which the contract provides for early termination of the employee's services, it also provides for termination of his salary. We cannot escape the implication that salary and services were promised in exchange for each other, and that Nutt's rendition of services, or, at least, his availability to render such services on request, is a condition of the company's liability for the salary. Consequently, the trial court correctly ruled that the company's obligation for the salary ended at Nutt's death.

Affirmed.